**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |  |
|---|---|---|
| FIRST BIOTECH INC., | : | |
| Plaintiff, | : | |
| v. | : | Court No.    26-03249 |
| UNITED STATES, | : | |
| Defendant. | : | |

**COMPLAINT**

Pursuant to Rule 3(a)(3) of the Rules of the United States Court of International Trade,

Plaintiff First Biotech Inc., by and through its undersigned counsel, brings this action and alleges

as follows.

**ADMINISTRATIVE DECISION TO BE REVIEWED**

1.        This action contests U.S. Customs and Border Protection's ("CBP") final

affirmative determination of evasion, issued on July 7, 2026, under 19 U.S.C. § 1517(f),

including its initial determination issued on February 26, 2026, under 19 U.S.C. § 1517(c),

pursuant to the Enforce and Protect Act ("EAPA") Consolidated Case Number 8144. This

determination involved allegations of evasion of the antidumping duty ("ADD") Order on certain

Xanthan Gum from the People's Republic of China ("China"). *Xanthan Gum from the People's*

*Republic of China; Amended Final Determination of Sales at Less than Fair Value and*

*Antidumping Duty Order*, 78 Fed. Reg. 43,143 (July 19, 2013) ("*ADD Order*"). CBP determined

that Plaintiff made material false statements that resulted in "any cash deposit or other security or

any amount of applicable antidumping or countervailing duties being reduced or not being

applied with respect to the merchandise" in the context of the statutory definition of "evasion"

under 19 U.S.C. § 1517. Administrative Review Determination in EAPA Consolidated Case No. 8144, CBP's Office of Trade, Regulations & Rulings (July 7, 2026) ("Administrative Review Determination"), at 5.

2. On July 31, 2025, CBP issued a Notice of Initiation of Investigation and Interim Measures ("Interim Measures") to three importers of xanthan gum from China: (1) First Biotech Inc.; (2) Jianlong Biotechnology Corporation; and (3) Deosen USA Inc. ("Deosen USA") (collectively, "Importers") concerning evasion of the *ADD Order*. CBP determined that there was sufficient information to initiate an investigation on First Biotech's imports, but that there was "not enough information at this time to impose interim measures on First Biotech."

3. On February 26, 2026, CBP's Trade Remedy and Law Enforcement Directorate ("TRLED") issued its Notice of Determination as to Evasion – EAPA Consolidated Case Number 8144 ("TRLED Determination").

4. On July 7, 2026, CBP's Office of Trade, Regulations & Rulings ("RR") affirmed TRLED's Determination in its Administrative Review Determination. The TRLED Determination and the Administrative Review Determination are referred to collectively herein as "CBP's EAPA decisions."

5. CBP's EAPA decisions cover Plaintiff's entries of xanthan gum from April 1, 2024, through the pendency of the investigation. Plaintiff imported xanthan gum from China that is covered by the EAPA investigation.

## JURISDICTION

6. Plaintiff contests CBP's EAPA decisions pursuant to 19 U.S.C. § 1517(g).

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), because this action is commenced pursuant to 19 U.S.C. § 1517 within 30 business days of the

date of the Administrative Review Determination.

## PARTIES

8.      Plaintiff is a company organized under the laws of the state of California. Plaintiff imported the subject xanthan gum from China from its affiliated producer/exporter, Neimenggu Fufeng Biotechnologies Co., Ltd. ("Neimenggu Fufeng"). Plaintiff participated in the EAPA investigation by filing questionnaire responses, written comments, and an administrative appeal.

9.      Defendant United States is the federal government and is the statutory defendant under 28 U.S.C. § 1581(c).

## STANDING

10.      Plaintiff is the importer of record in the United States of xanthan gum from China and participated in the EAPA investigation by filing questionnaire responses, written comments, and an administrative appeal. Plaintiff has standing to seek judicial review because Plaintiff is "a person determined to have entered such covered merchandise through evasion." 19 U.S.C. § 1517(g); *see* 28 U.S.C. § 2631(i); 5 U.S.C. § 702.

## TIMELINESS OF THIS ACTION

11.      RR issued the Administrative Review Determination on July 7, 2026. This Complaint and the concurrently filed Summons are timely filed within 30 business days after the completion of CBP's review. Accordingly, Plaintiff has commenced this action within the statutorily-prescribed time limits specified in 19 U.S.C. § 1517(g)(1).

## STATEMENT OF FACTS

12.      On July 19, 2013, the U.S. Department of Commerce ("Commerce") published its *ADD Order*, 78 Fed. Reg. 43,143. Although Fufeng was thereafter provisionally excluded from the *ADD Order* as a result of judicial challenge, Fufeng was subsequently reinstated as subject to

the *ADD Order*. *Xanthan Gum from the People's Republic of China: Notice of Third Amended Final Determination Pursuant to Court Decision*, 85 Fed. Reg. 40,967 (July 8, 2020).

13.     Fufeng has participated in multiple Annual Reviews of the ADD Order. In the Annual Review for the period July 1, 2022 – June 30, 2023 ("AR10") Commerce concluded that Fufeng was not dumping xanthan gum into the United States. *Xanthan Gum from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2022-2023*, 90 Fed. Reg. 22,240, 22,242 (May 27, 2025). The results of AR10 were published on May 27, 2025. As of that date and continuing through the date of this Complaint, First Biotech has not been required to deposit ADD at time of entry.[1] All Neimenggu Fufeng sales in AR10 were to First Biotech and First Biotech then resold the xanthan gum to unaffiliated customers in the United States. Commerce calculated Neimenggu Fufeng's ADD margin based on the constructed export price ("CEP") methodology, by comparing First Biotech's resale price to its unaffiliated customers to Normal Value (Neimenggu Fufeng's factors of production valued at market economy prices). The price at which Neimenggu Fufeng sold xanthan gum to First Biotech is not a significant factor in Commerce's CEP analysis; its only impact on CEP is to calculate duty payable upon entry. On November 12, 2025, CBP placed Commerce's AR10 reports of its verification of Neimenggu Fufeng and First Biotech on the record in this EAPA investigation.

14.     On March 27, 2025, CP Kelco U.S., Inc. ("Kelco"), a domestic xanthan gum producer, filed an EAPA allegation with CBP regarding the evasion of ADD by First Biotech. Kelco alleged that First Biotech undervalued xanthan gum from China to avoid paying adequate

---

[1] First Biotech's ADD cash deposit was 2.9 percent of entered value from February 6, 2024, through May 26, 2025. *Xanthan Gum from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021-2022*, 89 Fed. Reg. 8165, 8166 (Feb. 6, 2024).

ADD cash deposits. Kelco's allegation was based on comparing entered value declared by First Biotech with entered value of xanthan gum from other countries and companies. Kelco did not allege that the transactions between Neimenggu Fufeng and First Biotech were not sales.

15. On April 25, 2025, CBP's TRLED branch initiated an EAPA investigation of First Biotech. CBP's decision was based on information in Kelco's allegation. TRLED reasoned that "commercial trade data" submitted by Kelco was sufficient to commence an investigation as to whether the alleged undervaluation would result in "lower antidumping duty cash deposits and ultimately antidumping duty liabilities, than if the merchandise had been properly valued." Initiation of Investigation for EAPA Case Number 8144 (Apr. 25, 2025), at 4.

16. On July 2, 2025, TRLED placed on the record average unit values of xanthan gum imported from France in 2024.

17. On July 11, 2025, First Biotech responded to TRLED's request for information ("CF-28")[2] of May 13, 2025 for two entries of the five sample shipments, regarding the valuation of xanthan gum sold to First Biotech by its Chinese affiliate, Neimenggu Fufeng. First Biotech advised that First Biotech's purchase price was an acceptable entered value based on the "all costs plus profit" test, as defined in Section 152.103(l)(1)(iii), Customs Regulations. First Biotech submitted documentation supporting this claim, and also responding to multiple other questions in the RFI, relating to the transactions between Neimenggu Fufeng and First Biotech, First Biotech's resale, and Neimenggu Fufeng's costs and production process.

18. On July 31, 2025, TRLED provided First Biotech with notice that it had commenced an EAPA investigation based on Kelco's allegations. The Interim Measures advised that the investigation also covered Deosen USA. The investigation was based on the data

---

[2] The CF 28 responses were resubmitted to CBP on August 29, 2025 based on CBP request.

submitted by Kelco. TRLED noted that First Biotech had provided evidence that its purchase price from Neimenggu Fufeng satisfied the cost plus profit test, but nevertheless decided that there was sufficient information to commence the investigation. However, in light of the fact that First Biotech "provided at least some information and documentation in support of their claims that their prices for xanthan gum were sufficient for the sellers to recover their costs," TRLED decided that "there is not enough information at this time to impose interim measures on First Biotech." Interim Measures at 10. The Notice of Investigation did not contain any allegation or suggestion that the transactions between Neimenggu Fufeng and First Biotech were not sales.

19.    On September 17, 2025, First Biotech responded to TRLED's EAPA Request for Information ("RFI").[3] The response included, among other information, detailed documentation relating to five representative entries selected by TRLED for extensive analysis and a discussion of First Biotech's sales and resales. First Biotech prepared documentation in response, and no documentation or information arose that suggested to  First Biotech  that transactions between Neimenggu Fufeng and First Biotech were not sales.

20.    On September 22, 2025, Neimenggu Fufeng responded to TRLED's RFI. Neimenggu Fufeng resubmitted the RFI on October 2, 2025 based on TRLED's request. This response contained detailed information regarding Neimenggu Fufeng's corporate structure, accounting/ financial practices, sales, production, and reconciliations. Neimenggu Fufeng prepared documentation in response, and no documentation or information arose that suggested to Neimenggu Fufeng that transactions between Neimenggu Fufeng and First Biotech were not sales.

21.    On October 1, 2025, Kelco requested that TRLED ask First Biotech for additional

---

[3] First Biotech resubmitted the narrative response and certain exhibits of the RFI on October 6, 2025 based on TRLED request.

information relating to First Biotech's September 17, 2025 questionnaire response. Kelco's request did not contain any allegations that notified First Biotech of the possibility that transactions between Neimenggu Fufeng and First Biotech were not sales.

22.    On October 13, 2025, Kelco requested that TRLED ask First Biotech for additional information relating to Neimenggu Fufeng's October 2, 2025 questionnaire response. Kelco requested that TRLED ask Neimenggu Fufeng to clarify certain issues. However, Kelco's request did not contain any allegations that notified First Biotech of the possibility that transactions between Neimenggu Fufeng and First Biotech were not sales.

23.    On November 5 and 6, 2025, Neimenggu Fufeng and First Biotech responded to TRLED's supplemental requests for information. Neimenggu Fufeng advised the terms of sale between Neimenggu Fufeng and First Biotech and when the risk of loss transferred from Neimenggu Fufeng to First Biotech. See Neimenggu Fufeng Supplemental RFI (Nov. 5, 2025), at 9-10. First Biotech and Neimenggu Fufeng advised as to the terms of sale with the unaffiliated customers for the five sample sales.  Neimenggu Fufeng Supplemental RFI (Nov. 5, 2025), at 10; First Biotech Supplemental RFI (Nov. 6, 2025), at 6, 12. At the time Neimenggu Fufeng and First Biotech responded to these questions, they did not believe that the questions or responses related to the possibility that TRLED could conclude that transactions between Neimenggu Fufeng and First Biotech were not sales.

24.    On November 12, 2025, TRLED placed on the record five documents from Commerce's ADD proceedings: (1) Neimenggu Fufeng Section A Response in Commerce's Annual Review for the period July 1, 2023 – June 30, 2024; (2) Neimenggu Fufeng Section C Response in Commerce's Annual Review for the period July 1, 2023 – June 30, 2024; (3) Neimenggu Fufeng Section A Supplemental Response in Commerce's Annual Review for the

period July 1, 2023 – June 30, 2024; (4) Commerce's Verification Report of Neimenggu Fufeng-China in Commerce's Annual Review for the period July 1, 2022 – June 30, 2023; and (5) Commerce's Verification Report of First Biotech in Commerce's Annual Review for the period July 1, 2022 – June 30, 2023. These documents contained (among other information) detailed discussions, with supporting documentation, of Neimenggu Fufeng and First Biotech's transactions. In these documents, Neimenggu Fufeng and First Biotech described their transactions as sales, and Commerce accepted these transactions as sales. TRLED also placed on the record maps results of Google queries regarding Neimenggu Fufeng and First Biotech. There was nothing in these documents which would raise the possibility that TRLED could conclude that transactions between Neimenggu Fufeng and First Biotech were not sales.

25.    The record in the EAPA inquiry closed on November 12, 2025. After that date, parties were not allowed to place any additional factual information on the record.

26.    On December 16, 2025, First Biotech and Kelco filed pre-decision written arguments. First Biotech's argument focused on the fact that Neimenggu Fufeng – First Biotech sales prices satisfied the cost plus profit test. Kelco argued, for the first time in this EAPA inquiry, after the record was closed, that transactions between Neimenggu Fufeng and First Biotech were not sales.

27.    In rebuttal comments, submitted January 7, 2026, First Biotech responded to Kelco's arguments. First Biotech established that data and documents submitted to TRLED were complete and accurate and that Kelco misrepresented customs value law in arguing that the transactions between Neimenggu Fufeng and First Biotech were not sales.

28.    CBP's TRLED Branch issued its decision on February 26, 2026. It held that the transactions between Neimenggu Fufeng and First Biotech were not sales. TRLED relied on

8

multiple factors as the basis of its decision, including: (1) Neimenggu Fufeng and First Biotech have common ownership and share senior management and sales personnel; (2) senior Fufeng Group personnel hold positions across affiliated entities; (3) personnel not exclusively within First Biotech are responsible for communications and negotiations with U.S. customers; (4) U.S. warehousing is "temporary" and occurs after sales to U.S. customers had been negotiated; (5) Neimenggu Fufeng retained risk of loss through importation and delivery; (6) certain payments are not made strictly in accordance with the contractual payment terms; (7) First Biotech played only a limited or administrative role because, in connection with defective or returned merchandise, communications with U.S. customers are by a second affiliated entity; (8) First Biotech's role as the exclusive distributor of Neimenggu Fufeng's products in the United States indicates that it functions as a selling agent; and (9) First Biotech does not provide "meaningful instructions" to Neimenggu Fufeng.

29.    CBP's TRLED branch's decision either ignored or accorded limited weight to the following factors, upon which Commerce, CBP, and reviewing courts have traditionally relied in deciding whether a transaction was a sale: (1) Neimenggu Fufeng sells merchandise to First Biotech pursuant to binding agreements; (2) First Biotech is obligated to pay Neimenggu Fufeng and does pay Neimenggu Fufeng for the merchandise; (3) the transactions are recorded in First Biotech's books as purchases and resales; (4) First Biotech assumes ownership and bears the associated commercial risks, including risk of loss while goods are warehoused; (5) First Biotech resells the merchandise to U.S. customers in its own name; (6) pricing and negotiations are conducted by First Biotech personnel, including individuals who also hold roles within a second Fufeng Group affiliate reflecting the use of dual-hatted staff common in multinational enterprises; (7) pricing methodologies based on formulas from Neimenggu Fufeng are standard

9

commercial practice, but do not replace negotiation and decision making by First Biotech; (8)

First Biotech's accounting records reflect purchases and resales; (9) First Biotech realizes

substantial sale specific profits on its resales, as distinguished from fixed commissions normally

associated with agency agreements; (10) First Biotech pays U.S. income tax on its U.S. profits;

and (11) parent/subsidiary control and centralized management do not prevent First Biotech from

acting as a purchaser and reseller, as recognized in judicial precedent, *J.L. Wood v. United

States,* 62 C.C.P.A. 25, 505 F.2d 1400, 1406 (1974); *VWP of America, Inc. v. United States,* 175

F.3d 1327 (Fed. Cir. 1999), as well as CBP precedent.

30.    On April 9, 2026, First Biotech requested that CBP Headquarters reverse

TRLED's decision. First Biotech argued that the factors specified in paragraph 29 above

confirmed that the transactions between Neimenggu Fufeng and First Biotech constituted bona

fide sales and that the factors upon which TRLED relied should have been accorded limited

weight, if any, in CBP's analysis.

31.    On July 7, 2026, CBP Headquarters affirmed TRLED's February 26, 2026

decision. CBP reasoned that "to the extent that any findings or conclusions made herein as to the

proper appraisement of merchandise or otherwise are inconsistent with TRLED's findings or any

instructions previously given by TRLED, this decision supersedes those findings and/or

instructions." Administrative Review Determination at 31-32.

32.    The primary reason why CBP Headquarters decided that Neimenggu Fufeng's

transactions with First Biotech were not sales because payment was "not in accordance with the

terms outlined in the sales contracts and allowed First Biotech to make late, interest and penalty-

free payments for its purchases of xanthan gum." *Id*. at 15. CBP Headquarters reasoned:

> First Biotech's late penalty-free and interest-free payments to
> Neimenggu Fufeng resemble the facts underlying HQ H343362,

where the buyer paid its related seller several months late, despite the extended timeframe for payment, and did not tender interest on those payments. . . . Similarly, RR finds here that the transactions between First Biotech and Neimenggu Fufeng do not constitute *bona fide* sales due to the late and interest-free payments.

With regard to late payments, First Biotech claims that other multinational entities offer time extensions related to the payment for goods, and that it is a common practice for manufacturers to be involved in discussions with customers regarding defects, returns, or other remediation. However, First Biotech failed to provide any examples or support for this argument.

*Id.* at 16-17.

33.     With respect to transfer of title, CBP noted that "while First Biotech and Neimenggu Fufeng utilize Incoterms which may indicate the passage of title, First Biotech and Neimenggu Fufeng do not behave like separate entities between which title may pass. As discussed *supra*, First Biotech has made late and interest-free payments to Neimenggu Fufeng on several occasions." *Id.*

34.     With respect to warehousing CBP reasoned that "{w}hen the xanthan gum was stored in warehouses, the storage was only temporary and occurred long after sales transactions were actually negotiated with the unaffiliated U.S. buyers." *Id.* at 19.

35.     In response to First Biotech's argument that there is no evasion when the ADD cash deposit rate is zero, CBP reasoned that

While the rate may have been zero percent at the time of entry, that rate is subject to change. Thus, if it were to increase, because of the undervaluation by First Biotech, *ad valorem* duties applied to the merchandise would be lower than what they should be. Therefore, consistent with 19 U.S.C. § 1517(a)(5), there is substantial evidence of evasion because material false statements in the form of undervaluation by First Biotech result in reduction of duties applicable to the merchandise.

*Id.* at 20. CBP also noted that "on June 11, 2026, . . . {i}n the Post-Preliminary Analysis Memorandum, Commerce assigned a weighted-average dumping margin of 38.76 percent to Neimenggu Fufeng." *Id.*

36.    CBP then stated that the existence of late payments was sufficient reason why CBP "does not find First Biotech's arguments regarding the all costs plus a profit test persuasive." *Id.* at 30. CBP reasoned that the fact that:

> Neimenggu Fufeng did not charge First Biotech any interest or penalties on these late payments, despite the terms of the sales contracts, also supports CBP's conclusion that the parties did not buy and sell from one another as though they were unrelated," and that "these late payments, which were due in 2024 but not paid until 2025, lead to questions as to whether the delayed payments affected the profitability calculations under the all costs plus a profit test.

*Id.*

37.    In its July 7, 2026, decision, CBP Headquarters found that transactions between Deosen Ordos and Deosen USA were sales, thereby reversing TRLED's decision that they were not. *Id.* at 21-26. In its decision, CBP noted that Deosen Ordos transferred title to Deosen USA and that timely payments were made for the goods. *Id.* CBP then reversed TRLED's reliance on the facts that "employees of Deosen Ordos engaged in U.S. marketing activities, entered into sales contracts with U.S. buyers on behalf of Deosen USA, and negotiated prices and sales contracts with Deosen Ordos on behalf of Deosen USA" and that "Deosen USA did not appear to exercise much, if any, control over locating U.S. buyers and purchasing xanthan gum from Deosen Ordos" as reasons why the transactions were not sales. *Id.* at 22. CBP reasoned that "the use of a related company's employees resembles the buyer and seller relationship in *VWP of America, Inc.*" *Id.* As recounted by CBP, in that ruling: "The Federal Circuit affirmed CBP's finding that *bona fide* sales of fabric occurred between VWPC and VWPA despite VWPC's near-total control of VW," and despite the fact that "VWPA had no U.S. offices or warehouses,

12

carried no inventory, employed only a single employee, had only a post office box and bank account in Maine, and all of its books and records were maintained by its parent company, VWPC, in Canada." *Id*.

## STATEMENT OF CLAIMS

38.    CBP's Administrative Review Determination is unsupported by substantial evidence, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as set forth below.

### COUNT 1 – Lack of Substantial Evidence

39.    The facts and allegations contained in paragraphs 1 through 38 are restated and incorporated herein by reference.

40.    Substantial evidence on the record shows that the transactions between Neimenggu Fufeng and First Biotech were bona fide sales.

41.    There is no substantial evidence on the record that the transactions between Neimenggu Fufeng and First Biotech were not bona fide sales.

42.    CBP's EAPA decision finding evasion is arbitrary, capricious, and contrary to law as it is not based on substantial evidence on the record.

### COUNT 2 – Failure to Follow Controlling Law

43.    The facts and allegations contained in paragraphs 1 through 42 are restated and incorporated herein by reference.

44.    CBP's determination that that the transactions between Neimenggu Fufeng and First Biotech were not bona fide sales was contrary to law.  CBP ignored the statutory definition of transaction value, which is based on a price "paid or payable", the plain meaning of the term sales, the Uniform Commercial Code explanation as to the relevance of payment in determining

13

whether there is a sale, and the Appellate Court decision in *VWP*, which CBP has followed in multiple decisions and which CBP followed in deciding that the Deosen USA – Deosen Ordos transactions were bona fide sales.

### COUNT 3 – Plaintiff Did not Enter Covered Merchandise Through a False Statement

45. The facts and allegations contained in paragraphs 1 through 44 are restated and incorporated herein by reference.

46. To reach an affirmative determination as to evasion, EAPA requires that CBP find that the entries in question were made by a material false statement or act or material omission that avoided an ADD deposit obligation.

47. Plaintiff did not make any materially false statements or omissions by entering subject xanthan gum at the price paid by First Biotech to Neimenggu Fufeng.

48. CBP's finding that Plaintiff entered merchandise by a false statement is not supported by substantial evidence in the record, and is therefore arbitrary, capricious, and contrary to law.

### COUNT 4 – Improper Imposition of Burden of Proof

49. The facts and allegations contained in paragraphs 1 through 48 are restated and incorporated herein by reference.

50. CBP's affirmative determination of evasion was primarily based on its subsidiary conclusion that Neimenggu Fufeng's transactions with First Biotech were not sales is that payment was "not in accordance with the terms outlined in the sales contracts and allowed First Biotech to make late, interest and penalty-free payments for its purchases of xanthan gum."

51. CBP rejected First Biotech's defense that other multinational entities offer time extensions related to the payment for goods because "First Biotech failed to provide any examples or support for this argument."

14

52.    Plaintiff was first advised that late payment would constitute an issue in this case when TRLED issued its determination on February 26, 2026, and was first advised that late payment would become the primary basis for CBP's decision on July 7, 2026, when that decision was announced. The record in this case closed on November 12, 2025, before First Biotech was aware that CBP was contemplating deciding that First Biotech transactions with Neimenggu Fufeng were not sales and long before CBP Headquarters decided that late payment was the primary reason to reject these sales.

53.    CBP's decision to reject First Biotech's defense to CBP's late payment rationale for failing "to provide any examples or support for this argument," when First Biotech could not have anticipated the basis for CBP's decision when the record remained open is unsupported by substantial evidence and is arbitrary, capricious and contrary to law.

## COUNT 5 – Inconsistent Treatment of Similar Facts and Circumstances

54.    The facts and allegations contained in paragraphs 1 through 53 are restated and incorporated herein by reference.

55.    In its decision, CBP found that transactions between Deosen Ordos and Deosen USA were sales, while finding that transactions between Neimenggu Fufeng and First Biotech were not sales.

56.    The facts and circumstances underlying the Deosen USA – Deosen Ordos and First Biotech – Neimenggu Fufeng transactions were not materially different with respect to all factors which should be considered in determining whether transactions are sales.

57.    The sole difference between the transactions was that CBP found that First Biotech did not pay Neimenggu Fufeng on a timely basis, while Deosen USA's payments to Deosen Ordos were timely.

58.    CBP's disparate treatment of the Deosen USA – Deosen Ordos and First Biotech – Neimenggu Fufeng transactions is unsupported by substantial evidence and is arbitrary, capricious and contrary to law.

## COUNT 6 – Arbitrary Rejection of Costs Plus Profit Test

59.    The facts and allegations contained in paragraphs 1 through 58 are restated and incorporated herein by reference.

60.    CBP decided that the existence of late payments was sufficient reason why CBP "does not find First Biotech's arguments regarding the all costs plus a profit test persuasive." Administrative Review Determination at 30.

61.    In reaching this decision, CBP did not consider any evidence of record as to the potential impact of late payments on the cost plus profit test.

62.    CBP's rejection of First Biotech's cost plus profit test merely because of the existence of late payments, without further inquiry, is unsupported by substantial evidence and is arbitrary, capricious and contrary to law.

## COUNT 7 – First Biotech Exercised Reasonable Care

63.    The facts and allegations contained in paragraphs 1 through 62 are restated and incorporated herein by reference.

64.    A determination of evasion under EAPA requires a finding of a material false statement or omission and some level of culpability.

65.    Given the due diligence and reasonable care exercised by Plaintiff, no materially false statements or omissions were made when the goods entered the U.S. customs territory. Plaintiff reasonably relied on Commerce and CBP decisions accepting the Neimenggu Fufeng to First Biotech transfers of property as sales, and longstanding administrative practice and judicial

precedent as to whether a particular transaction constitutes a sale. Plaintiff did not have any knowledge of any evasion at the time of entry.

66.     Consequently, the claim that Plaintiff imported "covered merchandise" without properly claiming that the merchandise is subject to ADD is insufficient to establish evasion under EAPA. Therefore, Plaintiff did not evade the *ADD Order* and CBP's finding of evasion is arbitrary, capricious, and contrary to law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

(1)     Declaring that CBP's TRLED Determination and Administrative Review Determination to be unsupported by substantial evidence, arbitrary, capricious, and otherwise contrary to law;

(2)     Remanding CBP's TRLED Determination and Administrative Review Determination to CBP with instructions to terminate the investigation;

(3)     Declaring that Neimenggu Fufeng's transfers of property to First Biotech constitute bona fide sales which pass the cost plus profit test;

(4)     Awarding Plaintiff costs and any reasonable attorneys' fees and expenses; and

(5)     Granting such additional relief as the Court may deem just and proper.

Respectfully Submitted,

GRUNFELD, DESIDERIO, LEBOWITZ, SILVERMAN & KLESTADT LLP

*/s/ Ned H. Marshak*
Ned H. Marshak*
Elaine F. Wang
Brandon M. Petelin
Jordan C. Kahn
Sarah E. Raymond*

1201 New York Avenue, N.W., Suite 650
Washington, D.C. 20005
(202) 661-7784
-and-
* 599 Lexington Avenue, 36th Floor

17

18

New York, NY 10022
(212) 557-4400

*Counsel for Plaintiff First Biotech Inc.*

Dated: July 15, 2026

15320080_1